*In the United States District Court*
*for the Northern District of Illinois*
*Eastern Division*

| | |
|---|---|
| Northeast Series of Lockton Companies, LLC, | **12-cv-01695** |
| plaintiff and counterdefendant, | |
| – v – | Judge Guzman |
| David A. Bachrach, | Magistrate Judge Keys |
| defendant and counterplaintiff. | |

## Answer, Affirmative Defenses, and Counterclaim

## Answer

1.          This is an action to recover damages caused by Bachrach's breach of various contractual obligations following the termination of his interest as a Producer Member of Northeast effective December 15, 2011.

>          Answer:          Admit that plaintiff's Complaint so alleges; deny that Mr. Bachrach breached any contractual obligations.

2.          As set forth in detail below, Bachrach is contractually obligated to repay Northeast $336,726.75 pursuant to, among other things, his Member Agreement (the "Member Agreement"), which defined certain terms of Bachrach's Producer Member relationship with Northeast.  (A true and correct copy of Bachrach's Member Agreement is attached hereto as Exhibit A, and is hereby incorporated by reference as if set forth fully herein.)

>          Answer:          Admit that a true and correct copy of Mr. Bachrach's Member Agreement is attached to the Complaint as

Exhibit A.  Deny each and every remaining allegation of ¶2 of the Complaint.

3.    Despite a contractual obligation to repay Northeast, and demand by Northeast for such repayment, Bachrach has failed to repay any of the amount due.  Accordingly, Northeast hereby seeks to recover damages in the amount of $336,726.75, plus its fees, costs and pre-judgment interest.

> Answer:    Admit that plaintiff has demanded repayment from Mr. Bachrach, admit that Mr. Bachrach has not repaid the amount plaintiff claims is due, and admit that plaintiff claims its damages are as alleged in this paragraph.  Deny that Mr. Bachrach has a contractual obligation to repay plaintiff, deny that plaintiff has suffered any damage, and deny that Mr. Bachrach has "failed" to repay, because Mr. Bachrach has no obligation to repay.

4.    Plaintiff Northeast is a series established by Lockton Companies, LLC, an Illinois series limited liability company.  Northeast has its principal place of business in New York, New York.

> Answer:    Admit that plaintiff's principal place of business is in New York, New York.  Mr. Bachrach does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶4 of the Complaint.

5.    The current members of Northeast are as follows:

a.      Michael A. Calabrese, an individual who resides in, and is a citizen of, New York;

b.      Jude T. Donato, an individual who resides in, and is a citizen of, New York;

c.      David M. Giulietti, an individual who resides in, and is a citizen of, Connecticut;

d.      Gary J. Giulietti, an individual who resides in, and is a citizen of, Connecticut;

e.      Marianne Halvorsen, an individual who resides in, and is a citizen of, New York;

f.      William N. Husic, an individual who resides in, and is a citizen of, Connecticut;

g.      Ross Krasnow, an individual who resides in, and is a citizen of, New York;

h.      Joshua D. Olson, an individual who resides in, and is a citizen of, Connecticut;

i.      Edward J. Pizzo, an individual who resides in, and is a citizen of, Connecticut;

j.      James A. Roche, an individual who resides in, and is a citizen of, New York;

k.      Robert S. Ruotolo, an individual who resides in, and is a citizen of, New York;

l.      Debra P. Testa, an individual who resides in, and is a citizen of, Connecticut; and

m.      Lockton Insurance Agency, Inc., a corporation organized under the law of Missouri with its principal place of business in Missouri.

<u>Answer</u>:          Admit that all the above-mentioned individuals, with the exception of Lockton Insurance Agency, Inc., were employed by plaintiff when Mr. Bachrach was fired.

Mr. Bachrach does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶5 of the Complaint.

6.     Defendant Bachrach is an individual who resides in, and is a citizen of, New Jersey.  He was formerly a Producer Member of Northeast.

Answer:          Admit that Mr. Bachrach is an individual who resides in, and is a citizen of, New Jersey.  Admit that Mr. Bachrach executed a "Member Agreement".  Deny that the term "Producer Member" accurately describes Mr. Bachrach's relationship to plaintiff.  Mr. Bachrach does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶6 of the Complaint.

7.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because:  (a) it is a dispute between citizens of different states; and (b) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Answer:          Admit the subject-matter jurisdiction of this Court.

8.     Venue is proper in this Court, and the Court has personal jurisdiction over Bachrach, because Plaintiff and Bachrach agreed in writing that any action to enforce the terms of the contracts at issue in this case would be brought in Chicago, and both parties consented to jurisdiction in this Court.  Specifically, Section 7.7 of the Member Agreement, expressly provides that:  "Any action to enforce the provisions of this Agreement shall be brought in any Federal Court in

Chicago, Illinois, or Circuit Court in Cook County, Illinois" and that "[s]uch court shall have exclusive jurisdiction over these matters and Bachrach hereby agrees to be subject to the personal jurisdiction of such court."

    <u>Answer</u>:        Admit.

9.        Northeast offers its clients a wide variety of commercial insurance services, including risk management consulting and comprehensive services related to the negotiation and placement of insurance coverage and claims handling and prevention.

    <u>Answer</u>:        Admit.

10.        Northeast offers these services, in part, through its individual Producer Members, who have experience and expertise in the insurance services industry.

    <u>Answer</u>:        Admit that plaintiff offers those services. Admit that plaintiff offers those services through individuals. Admit that Mr. Bachrach executed a "Member Agreement". Deny that the term "Producer Member" accurately describes Mr. Bachrach's relationship to plaintiff. Mr. Bachrach does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶10 of the Complaint.

11.        Producer Members of Northeast are compensated, in part, by commission payments based on the revenue they generate and the profitability of Northeast.

    <u>Answer</u>:        Admit that Mr. Bachrach was compensated, at least in part, by commissions payments. Admit that Mr. Bachrach

executed a "Member Agreement". Deny that the term "Producer Member" accurately describes Mr. Bachrach's relationship to plaintiff. Mr. Bachrach does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶10 of the Complaint.

12.     Because, among other things, Producer Members of Northeast may earn their commissions on an irregular and unpredictable schedule, Northeast allows them to take regular and predictable "Draw" payments against their earned commissions. Northeast also advances payment for certain expenses incurred by, or on behalf of, the Producer Members in the course of their sales efforts. Northeast does so subject to the express agreement that its Producer Members will repay Northeast for any "Draw" payments or advanced expense payments that exceed the actual commissions earned by them.

Answer:     Admit that Mr. Bachrach earned his commissions on an irregular and unpredictable schedule. Admit that Mr. Bachrach was permitted to take "draw" payments against his earned commissions. Admit that Mr. Bachrach executed a "Member Agreement". Deny that the term "Producer Member" accurately describes Mr. Bachrach's relationship to plaintiff. Deny that plaintiff advanced payments for Mr. Bachrach's expenses in the course of his sales efforts. Deny that plaintiff and Mr. Bachrach had any express agreement for Mr. Bachrach to repay any draws or

advanced expense payments that exceed that actual
commissions earned by him.  Mr. Bachrach does not have
sufficient knowledge or information to form a belief as to the
truth of the remaining allegations of ¶12 of the Complaint.

13.        To become a Producer Member of Northeast, an individual executes a
"Member Agreement" between that individual and the Series.

<u>Answer:</u>            Admit that Mr. Bachrach executed a "Member
Agreement".  Deny that the term "Producer Member"
accurately describes Mr. Bachrach's relationship to plaintiff.
Mr. Bachrach does not have sufficient knowledge or
information to form a belief as to the truth of the remaining
allegations of ¶13 of the Complaint.

14.        Bachrach entered into his Member Agreement with Northeast effective
February 1, 2010.

<u>Answer:</u>            Admit.

15.        Among other things, Bachrach's Member Agreement provided that, in
exchange for becoming a Producer Member of Northeast, Bachrach agreed to
become a party to, and be bound by the terms of, the "Operating Agreement of
Lockton Companies, LLC and Each of Its Series" dated as of January 1, 2007 (the
"Operating Agreement").

<u>Answer:</u>            Admit that Mr. Bachrach executed a "Member
Agreement".  Deny that the term "Producer Member"
accurately describes Mr. Bachrach's relationship to plaintiff.

Deny each and every remaining allegation of ¶15 of the Complaint.

16.     The Operating Agreement was subsequently superceded by the "First Amended and Restated Operating Agreement of Lockton Companies, LLC and Each of Its Series" dated as of April 30, 2010 (the "Amended Operating Agreement").  In exchange for, among other things, his continuing participation as a Producer Member of Northeast, Bachrach agreed to become a party to, and be bound by the terms of, the Amended Operating Agreement.

Answer:     Admit that Mr. Bachrach executed a "Member Agreement".  Deny that the term "Producer Member" accurately describes Mr. Bachrach's relationship to plaintiff. Deny that Mr. Bachrach agreed to become a party to and/or to be bound by the terms of any Amended Operating Agreement.  Mr. Bachrach does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶16 of the Complaint.

17.     Pursuant to Bachrach's Member Agreement and the Operating Agreement, Bachrach made an initial $200.00 capital contribution to Northeast in exchange for his Producer Member interest in Northeast (known as a "Producer Unit"). Northeast then maintained a separate Capital Account for Bachrach.

Answer:     Admit that on Mr. Bachrach's first day of employment, after Mr. Bachrach was already employed by plaintiff and, with plaintiff's knowledge, had left his prior job

to become employed by plaintiff, plaintiff required him to pay $200 to "become a member of the office", presented Mr. Bachrach with a document, told Mr. Bachrach that he needed to sign the document immediately, told Mr. Bachrach that he could not change anything in the document, and told Mr. Bachrach that there was no use showing the document to an attorney. Further state that plaintiff never disclosed the conditions of the agreement to Mr. Bachrach in its recruitment of him nor during his employment with plaintiff. Admit that plaintiff claimed to maintain a Capital Account for Mr. Bachrach. Admit that Mr. Bachrach executed a "Member Agreement". Deny that the term "Producer Member" accurately describes Mr. Bachrach's relationship to plaintiff. Mr. Bachrach does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶17 of the Complaint.

18.     Thereafter, amounts paid to Bachrach as "Draw," and any advanced expense payments, were debited to his Capital Account balance.

Answer:          Admit Mr. Bachrach received a draw. Admit that plaintiff claimed to maintain a Capital Account for Mr. Bachrach. Deny that plaintiff made any advanced expense payments to Mr. Bachrach. Mr. Bachrach does not have sufficient knowledge or information to form a belief as

to the truth of the remaining allegations of ¶18 of the Complaint.

19.         Northeast credited to Bachrach's Capital Account any commissions he actually earned, as determined by the terms of Bachrach's Member Agreement, the Operating Agreement and/or the Amended Operating Agreement.

> Answer:         Admit that Mr. Bachrach earned commissions. Admit that Mr. Bachrach signed the Member Agreement. Admit that plaintiff claimed to have a Capital Account for Mr. Bachrach. Deny that Mr. Bachrach entered into any Operating Agreement and/or Amended Operating Agreement. Mr. Bachrach does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶19 of the Complaint.

20.         Pursuant to Bachrach's Member Agreement, the Operating Agreement and/or the Amended Operating Agreement, Bachrach was required to repay to Northeast any negative balance in his Capital Account (the "Termination Capital Account Balance") upon the termination of his membership interest in Northeast.

> Answer:         Admit that Mr. Bachrach signed the Member Agreement. Admit that plaintiff claimed to have a Capital Account for Mr. Bachrach. Deny each and every remaining allegation of ¶20 of the Complaint.

21.         Bachrach's interest as a Producer Member was terminated effective December 15, 2011 (the "Termination Date").

Answer: Admit that plaintiff fired Mr. Bachrach sometime in November 2011. Mr. Bachrach does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶21 of the Complaint.

22. As of the Termination Date, Bachrach had a negative Termination Capital Account Balance of $356,229.75.

Answer: Deny.

23. In connection with the termination of Bachrach's membership interest, Northeast bought back Bachrach's Producer Unit, which was valued at $19,303.00 (the "Buy-Sell Price"), pursuant to the terms of his Member Agreement and/or the Amended Operating Agreement.

Answer: Admit that plaintiff credited $19,303 to the monies that it claimed Mr. Bachrach owed it. Deny that $19,303 was the true value of Mr. Bachrach's Book of Business. Deny each and every remaining allegation of ¶23 of the Complaint.

24. By letter dated November 16, 2011, Northeast notified Bachrach that, among other things, he had a negative Termination Capital Account Balance and that he was obligated to pay it in full within 45 days of the Termination Date. In that same letter, Northeast notified Bachrach that Northeast might elect to pursue its right to offset the Buy-Sell Price against Bachrach's negative Termination Capital Account Balance.

Answer: Admit that Mr. Bachrach received from plaintiff a letter sometime in November 2011 that claimed that

Mr. Bachrach owed plaintiff money. Deny that that letter accurately stated Mr. Bachrach's contractual relations with plaintiff. Deny that Mr. Bachrach owed plaintiff money. Mr. Bachrach does not have a copy of that letter and does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶24 of the Complaint.

25.     By letter dated December 30, 2011, Northeast, among other things: (a) again notified Bachrach that he had a negative Termination Capital Account Balance; (b) informed Bachrach that Northeast had elected to pursue its right to offset the Buy-Sell Price against Bachrach's negative Termination Capital Account Balance; and (c) reminded Bachrach that he was obligated to pay his Termination Capital Account Balance within 45 days of the Termination Date.

<u>Answer</u>:          Admit that Mr. Bachrach received from plaintiff a letter sometime in December 2011 that claimed that Mr. Bachrach owed plaintiff money. Deny that that letter accurately stated Mr. Bachrach's contractual relations with plaintiff. Deny that Mr. Bachrach owed plaintiff money. Mr. Bachrach does not have a copy of that letter and does not have sufficient knowledge or information to form a belief as to the truth of the remaining allegations of ¶25 of the Complaint.

26.　　　　By letter dated December 30, 2011, Northeast informed Bachrach that, at

final determination, his Termination Capital Account Balance came to

$336,726.75.  Accordingly, by the same letter, Northeast demanded that

Bachrach repay the $336,726.75 negative Termination Capital Account Balance

to Northeast by January 29, 2012.

　　　　Answer:　　　　Admit that Mr. Bachrach received from plaintiff a

letter sometime in December 2011 that claimed that

Mr. Bachrach owed plaintiff money.  Deny that that letter

accurately stated Mr. Bachrach's contractual relations with

plaintiff.  Deny that Mr. Bachrach owed plaintiff money.

Mr. Bachrach does not have a copy of that letter and does not

have sufficient knowledge or information to form a belief as

to the truth of the remaining allegations of ¶26 of the

Complaint.

27.　　　　Despite the foregoing contractual obligations to repay Northeast a total of

$336,726.75, and demand by Northeast therefor, Bachrach has yet to pay any of

this amount to Northeast.

　　　　Answer:　　　　Admit that Mr. Bachrach has not paid any monies to

plaintiff with the exception of the $200 payment required on

his first day of employment.  Deny each and every remaining

allegation of ¶27 of the Complaint.

28.　　　　Northeast has performed all conditions precedent required of it.

Answer: Deny that plaintiff has met or performed the following conditions precedent required of it: providing consideration for any obligations that Mr. Bachrach allegedly entered into, having a meeting of the minds with Mr. Bachrach as to any obligations that Mr. Bachrach allegedly entered into, making an offer of contractual terms that Mr. Bachrach allegedly entered into, and meeting its obligation of good faith and fair dealing with regard to any contract between it and Mr. Bachrach. Mr. Bachrach realleges ¶1 through ¶63 of the Counterclaim, below.

29.     As a result of Bachrach's foregoing breach of his Member Agreement and the Amended Operating Agreement, Northeast has been damaged in the amount of at least $336,726.75.

Answer: Admit that Mr. Bachrach signed the Member Agreement. Deny that that Agreement accurately describes Mr. Bachrach's relationship to plaintiff. Deny each and every remaining allegation of ¶29 of the Complaint.

30.     In addition, Section 7.18 of Bachrach's Member Agreement and Section 11.1 of the Amended Operating Agreement provide that Northeast is entitled to recover its attorneys' fees, costs and pre-judgment interest if it is the prevailing party in any action to enforce those Agreements.

Answer: Admit that §7.18 of Mr. Bachrach's Member Agreement provides that "the prevailing party" shall be

entitled to, among other things, reasonable attorney's fees, costs, and interest.  Deny that that section applies only to plaintiff.

# Affirmative defenses

<u>First affirmative defense – failure of consideration</u>

1.        Mr. Bachrach realleges ¶1 through ¶63 of the Counterclaim, below.

2.        Plaintiff's continued employment of Mr. Bachrach did not provide consideration for its unilateral modifications to Mr. Bachrach's contract.  <u>See Doyle v. Holy Cross Hospital</u>, 186 Ill.2d 104, 708 N.E.2d 1140, 237 Ill.Dec. 100 (1999).

3.        Plaintiff did not provide any other consideration for its unilateral modifications to Mr. Bachrach's contract.

4.        Plaintiff's claim therefore fails due to failure of consideration.

<u>Second affirmative defense – no express agreement for personal liability</u>

1.        Mr. Bachrach realleges ¶1 through ¶63 of the Counterclaim, below.

2.        Mr. Bachrach and plaintiff did not enter into any express agreement by which Mr. Bachrach was personally liable for any alleged deficit in his draws advanced against his future commissions.

3.        Illinois law governs the contractual relationship between plaintiff and Mr. Bachrach.

4.        Illinois law presumes that, absent an express agreement to the contrary, advances against future commissions are presumed to be minimum compensation that the employee is not liable to repay.  <u>See In re Pre-Press</u>

Graphics Co., Inc., 310 B.R. 893 at 902 -03 (Bkrtcy. N.D. Ill. 2004), citing Steger
v. Lappin, 119 Ill.App.2d 146 at 149-150, 255 N.E. 2d 87 at 89 (2nd Dist. 1970) and
Elec. Supply Corp. v. Meyrick, 349 Ill.App. 383 at 385-86 110 N.E. 2d 525 at 526
(1st Dist.1953).

5.      Plaintiff's claim therefore fails due to lack of an express agreement by
Mr. Bachrach to be personally liable to repay his draws.

Third affirmative defense – prior breach of contract by plaintiff excusing Mr. Bachrach

1.      Mr. Bachrach realleges ¶1 through ¶63 of the Counterclaim, below.

2.      This affirmative defense is pled hypothetically on the premise that
Mr. Bachrach has contractual duties to plaintiff.

3.      By the acts and/or omissions alleged, plaintiff breached its contract with
Mr. Bachrach before any alleged breach by Mr. Bachrach of that contract.

4.      Plaintiff's claim therefore fails because its prior breach of contract excuses
Mr. Bachrach's alleged required performance and/or prevent plaintiff from
enforcing any alleged contract between it and Mr. Bachrach.

Fourth affirmative defense – unclean hands

1.      Mr. Bachrach realleges ¶1 through ¶63 of the Counterclaim, below.

2.      This affirmative defense is pled hypothetically on the premise that
Mr. Bachrach has contractual duties to plaintiff.

3.      By the acts and/or omissions alleged, plaintiff had unclean hands in its
contractual dealings with Mr. Bachrach.

4.　　　　　Plaintiff's claim therefore fails because its unclean hands excuse

Mr. Bachrach's alleged required performance and/or prevent plaintiff from

enforcing any alleged contract between it and Mr. Bachrach.

Fifth affirmative defense – fraud in the inducement

1.　　　　　Mr. Bachrach realleges ¶1 through ¶63 of the Counterclaim, below.

2.　　　　　By the acts and/or omissions alleged, plaintiff committed fraud to induce

Mr. Bachrach to enter into a contractual relationship with it.

3.　　　　　Plaintiff's claim therefore fails.

**Wherefore**, defendant David A. Bachrach prays that judgment be entered in his

favor and against plaintiff Northeast along with, pursuant to §7.18 of Mr. Bachrach's

Member Agreement attached to the Complaint as Exhibit A, his reasonable attorneys'

fees and costs incurred and such other and further relief as this Court deems just and

appropriate.

# Counterclaim

## Counterdefendant's recruitment of and promises to Mr. Bachrach

1.　　　　　Sometime around the Spring or Summer of 2009, a recruiter for

counterdefendant contacted Mr. Bachrach.

2.　　　　　Over the next eight months, counterdefendant and/or its representative

recruited Mr. Bachrach to work for counterdefendant.

3.　　　　　During counterdefendant's recruitment of Mr. Bachrach,

counterdefendant made various promises to Mr. Bachrach were he to accept an

offer of employment from counterdefendant, including:

a.        Counterdefendant would pay Mr. Bachrach $7,500 on the 15th and 30th of each month for a total of $180,000 per year (<u>See</u>, the "Summary of Terms" in the 1/22/2010 letter from Lockton to Bachrach, attached as Exhibit A to this Counterclaim);

b.        Counterdefendant would provide Mr. Bachrach with various employee benefits, including 401(k) matching contributions, medical and dental insurance, life insurance, travel accident insurance, and disability coverage (<u>See</u>, Exhibit A to this Counterclaim);

c.        Counterdefendant would give Mr. Bachrach the title of Senior Vice President and Producer with job responsibilities that included "developing new clients, overseeing Lockton resource deployment on behalf of them, and managing client relationships" (<u>See</u>, Exhibit A to this Counterclaim);

d.        Counterdefendant would provide Mr. Bachrach a private office with a desk, phone, computer, printer, and other office equipment;  and

e.        Counterdefendant would provide Mr. Bachrach with administrative support staff to assist with answering phones, sending and receiving faxes and e-mails, helping draft contracts, helping draft proposal presentations, and similar duties.

4.        During counterdefendant's recruitment of Mr. Bachrach, counterdefendant promised Mr. Bachrach that it would pay him $180,000 annually only were he to cover his own expenses.

5.	During counterdefendant's recruitment of Mr. Bachrach, Mr. Bachrach specifically inquired about counterdefendant's would handle any deficit in draws paid Mr. Bachrach against future commissions were Mr. Bachrach's employment with counterdefendant to end.  In response, counterdefendant's Chief Operating Officer, Tim Ryan, promised Mr. Bachrach that were Mr. Bachrach to leave voluntarily or involuntarily, counterdefendant would not come after him for any deficit in draws paid against future commissions.

6.	During counterdefendant's recruitment of Mr. Bachrach, counterdefendant repeatedly promised Mr. Bachrach that he would have at least three to five years to build his business for counterdefendant and, at Mr. Bachrach's request, counterdefendant prepared and shared with him projections based this promise of three to five years.  See the projections attached as Exhibit B to this Complaint.

7.	During counterdefendant's recruitment of Mr. Bachrach, Mr. Bachrach also inquired into tax payments on his earnings, in response to which counterdefendant promised that it would not withhold taxes on the $7,500 payments made to Mr. Bachrach bimonthly but that counterdefendant would withhold taxes from the commissions that Mr. Bachrach earned.

8.	During counterdefendant's recruitment of Mr. Bachrach, counterdefendant promised Mr. Bachrach that it had in-house resources such as a human resources support team, actuarial services, an ERISA attorney, a medical director, a COBRA administration team, and an IT department with custom software applications and support for clients.

9.      During counterdefendant's recruitment of Mr. Bachrach, counterdefendant promised Mr. Bachrach that he would be part of a team of five members to support his sales efforts and his clients.

10.     At no point during counterdefendant's recruitment of Mr. Bachrach did counterdefendant inform Mr. Bachrach that his use of its in-house services would be charged against his commissions.

11.     At no point during counterdefendant's recruitment of Mr. Bachrach did counterdefendant inform Mr. Bachrach that the employer share of the insurance premiums for his medical and dental insurance, his life insurance, his travel-accident insurance, and his disability insurance would be charged against his commissions.

12.     During counterdefendant's recruitment of Mr. Bachrach, counterdefendant knew that Mr. Bachrach was employed by another company and that Mr. Bachrach would have to leave that job in order to accept any offer of employment that counterdefendant made to him.

13.     Based upon these promises made by counterdefendant, on January 29, 2010, Mr. Bachrach resigned his position as Senior Vice President with USI and the nearly $400,000 in commissions that he expected to earn in the coming twenty-two months in order to accept counterdefendant's offer of employment.

14.     When Mr. Bachrach resigned from USI at the end of January 2010 to join counterdefendant, counterdefendant's promises outlined in ¶3 to ¶12 of this Counterclaim – with the exception of Mr. Bachrach covering his own expenses – were substantially-similar to the employment terms that Mr. Bachrach had had

with his previous employers and were consistent with those employment terms Mr. Bachrach had observed in his 20-plus years in the insurance industry.

15. Counterdefendant's promises outlined in ¶3 to ¶12 of this Counterclaim were false.

16. Counterdefendant made the promises outlined in ¶3 to ¶12 of this Counterclaim intending that Mr. Bachrach rely on them. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

17. Counterdefendant made the promises outlined in ¶3 to ¶12 of this Counterclaim knowing that they were false or with reckless disregard whether or not they were false. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

**Counterdefendant employs Mr. Bachrach**

18. Mr. Bachrach's employment with counterdefendant began around February 1, 2010. <u>See</u> Exhibit A to this Counterclaim.

19. At no point prior to or during his employment did counterdefendant inform Mr. Bachrach that he was free to work for other brokers or for himself, in addition to counterdefendant. Instead, counterdefendant made it clear that Mr. Bachrach was to work for it exclusively.

20. At the beginning of his employment, counterdefendant provided Mr. Bachrach with the following:

a. An iPhone connected to a counterdefendant phone number;

b. An office telephone with a counterdefendant phone number;

c.     A counterdefendant email address;

d.     A computer and other office equipment owned by counterdefendant; and

e.     Business cards with Mr. Bachrach's contact information at counterdefendant.

21.     At no point prior to or during his employment did counterdefendant inform Mr. Bachrach that he was free to use his own equipment instead of counterdefendant's.

22.     At no point prior to or during his employment did counterdefendant inform Mr. Bachrach that he was free to work at the times and locations of his choosing.

23.     Instead ,when Mr. Bachrach was not meeting with clients or in-the-field soliciting new business, counterdefendant expected Mr. Bachrach to be working from its offices.

24.     When Mr. Bachrach was out of the office to meet with clients or solicit new business, Mike Calabrese, Jude Donato, and Tim Ryan told Mr. Bachrach, "You should be in the office more" and would refer to Mr. Bachrach as "the lone wolf" and would comment, "You still work here?".

25.     Beginning in February 2010, Mr. Bachrach used the $7,500 that counterdefendant paid him twice per month to cover his expenses, including:

a.     His telemarketer who he had worked with prior to USI, who had brought over to USI, and who he had brought to counterdefendant from USI;

b.     His expenses for entertaining clients or prospective clients; and

c.     His travel expenses.

26.       Mr. Bachrach does not know whether counterdefendant charged him for the office space that he was using or for his usage of the phone lines, the computer, the e-mail system, paper, postage, and other miscellaneous administrative and office expenses that he used while conducting business for counterdefendant.

27.       To date, counterdefendant has neither offered nor provided Mr. Bachrach with a line-by-line accounting of its calculations of the alleged debt that counterdefendant claims Mr. Bachrach owes it.

## Counterdefendant changes the terms of its agreement with Mr. Bachrach

28.       Sometime in the Spring of 2011, counterdefendant approached Mr. Bachrach about cutting his bimonthly salary in order to give Mr. Bachrach "a longer runway" to earn his commissions against the draws he had been receiving and to attract new business to counterdefendant.

29.       In approximately May 2011, without Mr. Bachrach's agreement or consent and contrary to the promises counterdefendant had made to Mr. Bachrach when it was recruiting him, counterdefendant cut Mr. Bachrach's yearly salary by $50,000.

30.       Also around May 2011, without Mr. Bachrach's agreement or consent and contrary to the promises counterdefendant had made to Mr. Bachrach when it was recruiting him, counterdefendant stopped matching Mr. Bachrach's 401(k) contributions.

31.       Also around May 2011, without Mr. Bachrach's agreement or consent and contrary to the promises counterdefendant had made to Mr. Bachrach when it

was recruiting him, counterdefendant demanded and ordered that Mr. Bachrach stop contributing to his 401(k).

32.     Then around the Summer of 2011, without Mr. Bachrach's agreement or consent and contrary to the promises counterdefendant had made to Mr. Bachrach when it was recruiting him, counterdefendant refused to provide Mr. Bachrach with a private office even though it did have vacant offices through the remainder of Mr. Bachrach's employment.  Instead, counterdefendant assigned Mr. Bachrach to a cubical and counterdefendant told Mr. Bachrach that he had to "earn" an office.

33.     Counterdefendant sent to Mr. Bachrach tax form 1065 or Schedule K-1 for 2010 and 2011.

34.     When Mr. Bachrach received Schedule K-1 from counterdefendant, he asked COO Ryan about the form and COO Ryan instructed Mr. Bachrach to give his accountant a brochure from counterdefendant and said "that's what everyone is doing".

**Counterdefendant fires Mr. Bachrach**

35.     Sometime in November 2011, counterdefendant fired Mr. Bachrach.

36.     When counterdefendant fired Mr. Bachrach, it did not permit him to keep the phone numbers to his iPhone or office telephone.

37.     When counterdefendant fired Mr. Bachrach, it immediately shut off his access to his business e-mail with counterdefendant.

38.     When counterdefendant fired Mr. Bachrach, it did not permit him to keep the computer it had provided him.

39.     When counterdefendant fired Mr. Bachrach, it did not permit him to retain his current clients.

## Counterdefendant's Member Agreement

40.     On Mr. Bachrach's first day of employment with counterdefendant, after Mr. Bachrach was already employed by counterdefendant and, with counterdefendant's knowledge, had left his prior job to become employed by counterdefendant, counterdefendant presented Mr. Bachrach a document for him to sign.

41.     When counterdefendant presented this document to Mr. Bachrach, it told Mr. Bachrach that he needed to sign the document immediately, that he could not change anything in the document, that there was no use showing the document to an attorney, and that if he didn't sign the document then he would have no job.

42.     Before this first day of employment, counterdefendant had never presented Mr. Bachrach with this document nor with any substantially-similar document.

43.     Before this first day of employment, counterdefendant had neither discussed with Mr. Bachrach nor disclosed to Mr. Bachrach the details or terms of this document.

44.     When counterdefendant presented Mr. Bachrach with the document for his signature, counterdefendant did not present or offer to Mr. Bachrach a copy of the alleged Operating Agreement referenced in the document.

45.     At no time before or during his employment did counterdefendant ever disclose or share with Mr. Bachrach the alleged Operating Agreement or any of its details.

46.     Mr. Bachrach signed the document the same day that counterdefendant presented it to him.

47.     On his first day of employment and at the same time that counterdefendant required Mr. Bachrach's signature on its Member Agreement, counterdefendant demanded $200 from Mr. Bachrach.

48.     Counterdefendant told Mr. Bachrach that this $200 was to "join the office" and did not further explain why it was requiring Mr. Bachrach to pay it $200.

49.     At no time during its recruitment of Mr. Bachrach did counterdefendant ever disclose or share with Mr. Bachrach that it requires its employees pay $200 to "join the office".

50.     At no time during its recruitment of Mr. Bachrach did counterdefendant ever disclose or share with Mr. Bachrach the purpose, reasoning, rationale, or significance of any money that its employees were expected to pay to counterdefendant.

51.     This same day that counterdefendant demanded $200 from Mr. Bachrach, Mr. Bachrach wrote counterdefendant a check for $200.

**Counterdefendant "membership" is a sham**

52.     Counterdefendant never involved Mr. Bachrach in any of its discussions or decisions with regards to the operations of counterdefendant.

53.     Counterdefendant never involved Mr. Bachrach in any of its discussions, reviews, or analyses of its financial performance.

54.     Counterdefendant never shared with Mr. Bachrach its profit-and-loss statements nor its balance sheets.

55.     When Mr. Bachrach would ask about counterdefendant's business, Michael A. Calabrese would respond to Mr. Bachrach "I don't have to tell you anything" and would tell Mr. Bachrach "You don't talk when I am speaking".

56.     Mr. Bachrach never received any benefits of his alleged "membership" in counterdefendant.

## Counterdefendant fires Mr. Bachrach

57.     Sometime in November 2011, counterdefendant fired Mr. Bachrach.

58.     Sometime in November 2011, counterdefendant notified Mr. Bachrach that it was filing a disaffiliation form with all states in which he holds an insurance license and that any mail that counterdefendant receives from a Department of Insurance would be returned to sender.  See 11/14/2011 letter attached as Exhibit C to this Counterclaim.

59.     Counterdefendant claimed to credit to the balance that it alleged Mr. Bachrach owed it 1) the $200 that Mr. Bachrach had paid it to "join the office" and 2) what it claimed it calculated the value of Mr. Bachrach's Book of Business as.

60.     Counterdefendant claimed to have calculated the value of Mr. Bachrach's Book of Business to be $19,303.

61.     According to industry standard and practice, a Book of Business is valued at one-and-one-half times the prior twelve-month period of revenue generated.

62.     The value of Mr. Bachrach's Book of Business was approximately eight to twelve times what counterdefendant valued it at.

63.     Counterdefendant grossly underpaid Mr. Bachrach when it credited his account only $19,303 for his Book of Business.

**Count I – Unpaid wages under Illinois Wage Payment and Collection Act.**

64.     Mr. Bachrach realleges ¶1 through ¶63 of this Counterclaim.

65.     At all times relevant to this Counterclaim, there was in full force and effect in the State of Illinois a statute known as the Wage Payment and Collection Act 820 ILCS 115/1, et seq.

66.     At all times when Mr. Bachrach was employed by counterdefendant, he was an "employee" within the definition of §2 of the Wage Payment and Collection Act [820 ILCS 115/2].

67.     At all times when counterdefendant employed Mr. Bachrach, it was an "employer" within the definition of §2 of the Wage Payment and Collection Act [820 ILCS 115/2].

68.     Mr. Bachrach has performed all conditions precedent of his agreement with counterdefendant to be paid $7,500 on the 15th and 30th of each month for a total of $180,000 per year and to receive from counterdefendant various employee benefits, including 401(k) matching contributions, medical and dental insurance, life insurance, travel accident insurance, and disability coverage.

69.     Counterdefendant's failure to pay Mr. Bachrach the wages and benefits agreed violated the Wage Payment and Collection Act.

70.     At all times when Mr. Bachrach was employed by counterdefendant, and continuing to the present, there was in full force and effect in the State of Illinois a statute called the Interest Act [815 ILCS 205/0.01, et seq.].

71.     At all times when counterdefendant employed Mr. Bachrach and continuing to the present, §2 of the Interest Act stated, in relevant part:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any ... other instrument of writing... and on money withheld by an unreasonable and vexatious delay of payment."

[815 ILCS 205/2.]

72.     The unpaid wages and employee benefits were due on an "instrument of writing" for purposes of §2 of the Interest Act.

73.     In the alternative, the unpaid wages and employee benefits were "withheld by an unreasonable and vexatious delay of payment" for purposes of §2 of the Interest Act.

74.     Under the Interest Act, Mr. Bachrach is therefore entitled to pre-judgment interest on the unpaid wages and employee benefits.

**Wherefore**, counterplaintiff David A. Bachrach prays for judgment in his favor and against counterdefendant:

a.     In the amount shown to be due him for counterdefendant's failure to pay him his wages and employment benefits; and

b.        2% of the amount of any such underpayment for each month following the date of payment during which such underpayment remains unpaid, as provided by §14(a) of the Illinois of the Wage Payment and Collection Act [820 ILCS 115/14(a)] ; and

c.        Pre-judgment interest under the Interest Act on the amount shown to be due him for counterdefendant's failure to pay him his wages and employee benefits; and

d.        The costs of this counterclaim, including his reasonable attorneys fees pursuant to §14(a) of the Wage Payment and Collection Act [820 ILCS 115/14(a)] or, in the alternative, pursuant to §7.18 of Mr. Bachrach's Member Agreement attached to the Complaint as Exhibit A.; and

e.        Such other relief as this Court deems just and appropriate.

**Count II – Accounting**

75.        Mr. Bachrach realleges ¶1 through ¶63 of this Counterclaim.

An accounting from counterdefendant is needed to determine the exact amount of money due Mr. Bachrach.

***Wherefore***, counterplaintiff David A. Bachrach prays for:

a.        An Order that an auditor be appointed to examine counterdefendant's accounts and records and to report back to this Court what amounts, if any, are due from defendant to counterplaintiff under his agreement with counterdefendant and/or applicable doctrines of law;

b.        Judgment in his favor and against counterdefendant in the amount shown to be due him by that accounting;

    c.        Judgment in his favor and against counterdefendant for pre-judgment interest on the amount shown to be due him by that accounting;

    d.        Judgment in his favor and against counterdefendant for 2% of the amount of any such underpayment for each month following the date of payment during which such underpayment remains unpaid, as provided by §14(a) of the Wage Payment and Collection Act [820 ILCS 115/14(a)];

    e.        The costs of this action, including his reasonable attorneys fees pursuant to §14(a) of the Wage Payment and Collection Act [820 ILCS 115/14(a)] or, in the alternative, pursuant to §7.18 of Mr. Bachrach's Member Agreement attached to the Complaint as Exhibit A.

    f.        Such other relief as this Court deems just and appropriate.

**Count III – Federal Minimum Wage Violation**

76.        This Count is pled hypothetically on the premise that Mr. Bachrach is found liable to plaintiff.

77.        Mr. Bachrach realleges ¶1 through ¶63 of this Counterclaim.

78.        The compensation that Mr. Bachrach received from counterdefendant was less than the minimum wage under the Fair Labor Standards Act of 1938, as amended.

79.        Counterdefendant willfully violated the Fair Labor Standards Act of 1938, as amended.

***Wherefore***, counterplaintiff David A. Bachrach prays:

a.      That this Honorable Court order counterdefendant to produce all records of all hours worked by him and of all compensation received by him for the three years immediately preceding the filing of this lawsuit;

b.      That this Honorable Court enter judgment in his favor and against counterdefendant for the amount shown to be due him for counterdefendant's failure to pay him the minimum wage for all hours worked;

c.      That this Honorable Court enter judgment in his favor and against counterdefendant for liquidated damages in an amount equal to the amount shown to be due him for counterdefendant's failure to pay him the minimum wage for all hours worked;

d.      That this Honorable Court enter judgment in his favor and against counterdefendant for reasonable attorney's fees and the costs and expenses of this counterclaim; and

e.      That this Honorable Court enter award him such other relief as this Court deems just and appropriate.

## Count IV – Fraud

80.      Mr. Bachrach realleges ¶1 through ¶63 of this Counterclaim.

81.      As a result of this fraud, Mr. Bachrach lost wages, lost his Book of Business, and suffered pain.

82.      To punish counterdefendant for this fraud and to deter future frauds by counterdefendant and other employers, exemplary damages should be awarded.

*Wherefore*, counterplaintiff David A. Bachrach prays for judgment in his favor and against counterdefendant for:

      a.     Compensatory damages;

      b.     Exemplary damages;

      c.     Costs and expenses of this action; and

      d.     Such other and further relief as this Court deems just and appropriate.

David A. Bachrach,
defendant/counterplaintiff,

By:   s/David L. Lee
His attorney

**Proof of service**: David L. Lee, an attorney, certifies that service of this Answer, Affirmative Defenses, and Counterclaim on plaintiff/counterdefendant's attorney was accomplished by ECF on August 8, 2012

   s/David L. Lee
David L. Lee

David L. Lee, ARDC #1604422
Law Offices of David L. Lee
53 W. Jackson Blvd., Suite 505
Chicago, IL 60604-3437
312-347-4400
d-lee@davidleelaw.com