UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTHEAST SERIES OF LOCKTON COMPANIES, LLC, | )<br>)<br>) |
|     Plaintiff and Counter-defendant, | )<br>)   **Case No. 12 C 1695** |
| v. | )<br>)   **Judge Ronald A. Guzmán** |
| DAVID A. BACHRACH, | )<br>) |
|     Defendant and Counter-plaintiff. | ) |

**MEMORANDUM OPINION AND ORDER**

Northeast Series of Lockton Companies, LLC brought suit against David A. Bachrach for various breaches of his contractual obligations as a former Member[1] of the plaintiff. The defendant filed a counterclaim, alleging violations of the Illinois Wage Payment and Collection Act and the Fair Labor Standards Act as well as a claim for fraud and one for equitable accounting. The plaintiff has moved to dismiss the defendant's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the plaintiff's motion is denied in part and granted in part.

**I.    BACKGROUND**

The well-pleaded allegations are accepted as true for purposes of this motion to dismiss. The plaintiff offers a variety of commercial insurance services through its Producer Members ("Members"), who have professional experience and expertise in the insurance industry. (Compl., Dkt # 1, ¶¶ 9–10.) The defendant was formerly one of the plaintiff's Members. (*Id.* ¶

---

[1] The parties dispute the nature of the employment relationship between the parties and the Court's use of the term Member, as defined in the Background section of this order, is not intended to indicate any resolution of that disagreement.

6.) The plaintiff's Members are compensated by commission payments based on the revenue they generate and the plaintiff's profitability. (*Id.* ¶ 11.) Because Members may generate income on an irregular basis, the plaintiff allows them to take regular draw payments and recover certain expenses incurred in the course of their sales efforts. (*Id.* ¶ 12) However, every Member is contractually bound to repay any of these draw payments and advanced business expenses that exceed the actual commissions earned by the Member. (*Id.* ¶¶ 12, 20.) The plaintiff alleges that despite this obligation pursuant to the Member Agreement, the Operating Agreement and the Amended Operating Agreement, the defendant failed to repay his negative capital account balance of $336,726.75 when his membership was terminated on December 15, 2011. (*Id.* ¶¶ 20–21, 26.)

The defendant has filed a counterclaim alleging four claims: (1) violation of the Illinois Wage Payment and Collection Act ("Wage Act") (2) equitable accounting, (3) violation of the Fair Labor Standards Act ("FLSA") and (4) fraud. (Counterclaim, Dkt. # 19, ¶¶ 69, 75, 79, 82.) The plaintiff moves to dismiss each of the counts.

## II.    LEGAL STANDARD

The purpose of a 12(b)(6) motion to dismiss it to test to sufficiency of the complaint, not to resolve the case on the merits. *Autry v. Nw. Premium Servs.*, 144 F.3d 1037, 1039 (7th Cir. 1998). A plaintiff must plead only "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). In evaluating a motion to dismiss, the court accepts as true all well-plead factual allegations in the complaint, and any inferences reasonably drawn from those facts are construed in the light most favorable to the plaintiff or, here, counter-plaintiff. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009).  A claim is facially plausible when the court can draw the reasonable inference from the presented facts that the defendant is liable for the alleged wrong. *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 556 (2007).

## III.    DISCUSSION

### A.    *The Wage Act*

The defendant alleges in Count I of his counterclaim that the plaintiff failed to pay him in violation of the Wage Act.  (Counterclaim, Dkt. # 19 ¶¶ 64-73.)  The purpose of the Wage Act is to provide employees in Illinois with a forum to seek timely and complete payment of earned wages or final compensation without retaliation from employers.  *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998); *Miller v. Kiefer Specialty Flooring, Inc.* 739 N.E.2d 982, 987 (Ill. App. Ct. 2000).  The plaintiff contends that Count I must be dismissed because the Wage Act does not apply to out-of-state employees. (Pl.'s Mot., Dkt. # 23 at 5.)

The Seventh Circuit has stated, however, that "nonresidents of Illinois who work in that state for an in-state employer may qualify as employees within the protection of the Wage Act." *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004).  In so stating, the Seventh Circuit "focused on the geographic location in which the employee had performed work." *Vendetti v. Compass Envtl.*, No. 06 C 3556, 2006 WL 3694852, at *2 (N.D. Ill. Dec. 14, 2006).  While it is undisputed that the defendant is a resident and citizen of New Jersey (Def.'s Answer ¶6), the parties do not discuss where he performed his work.  Accordingly, the Court cannot determine on the current record whether the plaintiff may pursue a claim under the Wage Act. Accordingly, the motion to dismiss this claim is denied.

### B.    *Accounting*

In Count II of his counterclaim, the defendant seeks an accounting in order to determine what is owed him. (Counterclaim, Dkt. # 19, ¶ 75.) The plaintiff moves to dismiss this count, arguing that an independent claim for accounting is unnecessary because the defendant has an adequate remedy at law.

"To obtain an accounting, a claimant must establish the absence of a remedy at law and either (1) the existence of a fiduciary relationship between the plaintiff and the person required to account, (2) the need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature." *Travelers Cas. and Sur. Co. of Am. v. Paderta*, 10 C 0406, 2010 WL 5419065, at *6 (N.D. Ill. Dec. 23, 2010). Here, the defendant asserts in his response brief that the Wage Act claim is an "implicit" breach of contract claim. (Resp., Dkt. # 29, at 11.) "[C]ourts have dismissed accounting claims where breach of contract has also been alleged." *3Com Corp. v. Elec. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 941 (N.D. Ill. 2000). Because the defendant acknowledges that he has an adequate remedy at law, Count II of the defendant's counterclaim is dismissed.

C.  **FLSA**

In Count III, the defendant alleges that the compensation he received was less than the required minimum wage pursuant to the FLSA. (*Id.* ¶ 78.) The plaintiff moves to dismiss on the ground that the defendant does not qualify as an "employee" under the FLSA.

When determining whether an employee-employer relationship exists for purposes of the FLSA, a court considers the "economic realities" of the relationship as well as the degree of control exercised by the employer over the employee. *Goldberg v. Whitaker House Coop.*, 366

4

U.S. 28, 33 (1961); *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). More specifically, courts consider six factors when making this determination:

(1) The nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
(2) The alleged employee's opportunity for profit or loss depending upon his managerial skill;
(3) The alleged employee's investment in equipment or materials required for his task, or his employment of workers;
(4) Whether the service rendered requires a special skill;
(5) The degree of permanency and duration of the working relationship; and
(6) The extent to which the service rendered is an integral part of the alleged employer's business.

*Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987).

The plaintiff contends that because the defendant alleges that: (1) he received K-1 tax forms instead of W-2 forms; (2) the plaintiff paid him $7,500 twice per month to cover his own business expenses; (3) he paid $200 as a capital contribution to "join the office"; and (4) he received a $19,303 credit for the value of his book of business upon his departure, the Court should find as a matter of law that the defendant was a member and not an employee for purposes of the FLSA.

The defendant, however, alleges other facts relevant to determination of whether he was an employee. For instance, he alleges that while he paid for certain of his business expenses from the money the plaintiff paid him, he does not know if the plaintiff charged him for other expenses such as his use of office space, phones, e-mail, paper and postage. (Counterclaim, Dkt. # 19, ¶ 26.) Moreover, the defendant alleges that the plaintiff gave him his own space in the plaintiff's office, providing him with company phone and phone numbers and other office equipment, admonishing him to spend more time in the office, "downgrading" the defendant to a cubicle in the summer of 2011 and directing him to "earn" a private office. (*Id.* ¶¶ 22-24, 32.)

The defendant also alleges that the plaintiff ultimately decreased or withheld benefits and cut his salary without consent. (*Id.* ¶¶ 28-31.)

Given these facts and without further development of the record as to the factors listed above, the Court is unwilling to dismiss the FLSA claim at this time. Consequently, the plaintiff's motion to dismiss Count III of the defendant's counterclaim is denied.

## D.     Fraud

Count IV of the defendant's counterclaim alleges fraud claiming that the plaintiff, during its eight-month recruitment of the defendant, made a series of promises to the defendant regarding payments to be made to him, his benefits, job responsibilities and title, and details regarding his office and support staff. (Counterclaim, Dkt. # 19, ¶ 3.) He further alleges that the promises were false, the plaintiff knew them to be false, the plaintiff intended him to rely on the promises and he did to his detriment. (*Id.* ¶¶ 15-17.)

The plaintiff contends that the defendant is barred from bringing a claim for fraud based on the no-reliance clause in the Membership Agreement, which states that "[o]ther than as set forth in this Agreement, there are no promises, representations or warranties which any party made on which any other party relied in entering into this Agreement." According to the Seventh Circuit, "a written anti-reliance clause precludes any claim of deceit by prior representations." *Rissman v. Rissman*, 213 F.3d 381, 384 (7th Cir. 2000). The defendant does not address the substance of the argument and instead states conclusorily that "[a]s a general rule, integration and no-reliance clauses do not preclude a plaintiff from relying upon extrinsic evidence in order to establish a cause of action for fraud." (Resp., Dkt. # 29, at 14.)

It is true that "the parole evidence rule is not a doctrine of tort law and so an integration

6

clause does not bar a claim of fraud based on statements not contained in the contract." *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002). However, integration and no-reliance clauses are not the same thing. As noted by the Seventh Circuit, "one consequence of the rule [that an integration clause does not bar a fraud claim] is that parties to contracts who do want to head off the possibility of a fraud suit will sometimes insert a 'no-reliance' clause into their contract, stating that neither party has relied on any representations made by the other." *Id.* Because reliance is an element of fraud, "the clause, if upheld . . . precludes a fraud suit." *Id.* at 645.

The defendant alleges that he was first given the Member Agreement containing the no-reliance clause after he joined the plaintiff and that he was forced to sign the document without being allowed to consult an attorney. The plaintiff contends that the defendant's assertion of ignorance is belied by the fact that he signed and accepted a letter on January 23, 2010 which outlines the basic terms of his anticipated relationship with the plaintiff and states that "[a]s a Producer Member, you will be required to sign a Northeast Series Member Agreement." (Counterclaim, Dkt. # 19, Ex. A.) Thus, the plaintiff argues, either the defendant knew the terms of the Member Agreement, including the no-reliance clause, prior to signing the January 23, 2010 letter or elected not to review the Member Agreement before accepting the basic terms of his employment. Either way, the plaintiff asserts, the defendant is bound by his actions and cannot plead ignorance.

Again, however, at this stage of the proceedings and without knowing the facts surrounding the defendant's execution of the Member Agreement, the Court is unwilling to conclude that the no-reliance clause should be upheld. Accordingly, the plaintiff's motion to

dismiss the fraud claim on this ground is denied.

The plaintiff also asserts that the defendant failed to plead the fraud claim with particularity as required by Federal Rule of Civil Procedure 9(b). The requirement of particularity means the "who, what, when, where, and how" of the claim. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 569 (7th Cir. 2012). The purpose of the heightened standard of pleading for fraud is to protect from unwarranted allegations the reputations of those accused. *U.S. ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007). A claim for fraud contains five elements: (1) a false statement of material fact, (2) the person making the false statement knows or believes it to be false, (3) an intent to induce the other party to act, (4) action by the other part in reliance on the truth of the statement, and (5) actual damages resulting from the reliance. *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. PRO. 9 (b).

The defendant alleges that "[s]ometime around the Spring or Summer of 2009, a recruiter for counterdefendant [*i.e.*, plaintiff] contacted [him]" and that "[o]ver the next eight months, counterdefendant and/or its representative recruited [him] to work for counterdefendant." (Def.'s Counterclaim, Dkt. # 19, ¶¶ 1-2.) The defendant then goes on to allege in detail the various promises the "counterdefendant" made to him. The plaintiff contends that the defendant must allege a specific individual, not an entity, who made these promises. The Court agrees. Given the length of the negotiations and the specificity used by the defendant in describing the promises made to him, the Court sees no reason why the defendant should not be required to plead the name of the individual(s) who made these purported promises. This is not information

that is exclusively in the hands of the plaintiff nor can it be inferred from other parts of the counterclaim as the defendant fails to name any individuals with whom he dealt at the plaintiff. To the extent that the plaintiff challenges the time period, the Court finds that the defendant's designation of the spring or summer of 2009 and the following nine months sufficiently identifies the "when" of the purported misrepresentations.

Accordingly, the defendant is given 14 days from the date of entry of this order to replead the fraud claim as provided herein.

## IV.   CONCLUSION

For the foregoing reasons, the plaintiff's motion to dismiss the counterclaim [23-1] is granted in part and denied in part. The motion to dismiss Count II is granted while the motion to dismiss Counts I and III is denied. The plaintiff's motion to dismiss Count IV is denied on the ground of the no-reliance clause but is granted to the extent that the allegations fail to comply with Federal Rule of Civil Procedure 9(b). The defendant is given 14 days from the date of entry of this order to replead the fraud claim as provided herein.

**Date**: November 5, 2012

_____
**Ronald A. Guzman**
**United States District Judge**